UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

PEGGY A. MATHES,

    Plaintiff,

    v.                                                  Case No.  10-C-0940

MICHAEL J. ASTRUE,

    Defendant.

---

ORDER REVERSING THE DECISION OF
AND REMANDING CASE TO THE COMMISSIONER

Peggy A. Mathes filed for Disability Insurance Benefits ("DIB") on October 3, 2006, alleging an onset date of September 15, 2005. (Tr. 11.) After her application was denied initially and upon reconsideration, Mathes requested an administrative hearing, which was conducted on September 15, 2009. *Id*. Administrative Law Judge ("ALJ") Wayne L. Ritter issued a partially favorable decision on October 6, 2009, pursuant to sections 216(I) and 223(d) of the Social Security Act, finding that Mathes was disabled for a period beginning September 15, 2005, and ending September 19, 2007, but was not disabled thereafter. (Tr. 11-18.) The Appeals Council denied Mathes's request for review on September 23, 2010, which made the ALJ's determination the final decision of the Commissioner. (Tr. 1-3.) Mathes now seeks judicial review.

STATEMENT OF FACTS

Mathes contends that she has been unable to work since September 15, 2005, due to a back injury and tendon rupture. (Tr. 159.) Prior to her injury, Mathes was employed

1

from August 13, 1989, to September 15, 2005, as a loader/trainer for a manufacturing business. (Tr. 168.) From January 01, 1998, to September 15, 2005, she also worked as a secretary for a tax preparation business. *Id.*

In September 2005, Dr. Jonathan D. Pond assessed Mathes's back pain associated with left buttock and leg pain as degenerative L4-5 spondylolisthesis. (Tr. 264.) On September 15, 2005, the alleged onset date, Dr. Pond performed surgery on Mathes including: (1) L4-5 laminectomy and bilateral foraminotomies; (2) transforaminal lumbar interbody fusion; (3) posterior spinal fusion with instrumentation and; (4) allograft bone grafting and autogenous bone marrow harvest. (Tr. 222.) Dr. Pond restricted Mathes with regard to bending, lifting, and twisting, as of October 31, 2005. (Tr. 266.) However, he stated that she was able to "walk as much as she like[d]." *Id*. At this visit, Dr. Pond also wrote Mathes a prescription for Tylenol with Codeine. *Id*.

On December 12, 2005, Dr. Pond continued treating Mathes and noted that she had some ongoing back pain which was worse with activity. (Tr. 268.) He suggested Mathes begin physical therapy in six weeks and indicated that he did "not anticipate her going back to work without restrictions until at least the 6-month mark from surgery." *Id*. On January 23, 2006, Dr. Pond wrote that Mathes was not as well as he would like. (Tr. 270.) Mathes described her pain as a level eight. (Tr. 272.) Dr. Pond continued to treat Mathes.

Five months later, in June 2006, Dr. Pond observed that Mathes had sacroiliac joint pain on the left and recommended a left SI joint injection. (Tr. 283.) Dr. Pond opined, in August 2006, that Mathes had persistent SI joint pain and the injections did not resolve her

2

symptoms. (Tr. 288.) In October 2006, Dr. Pond diagnosed Mathes with a solid arthrodesis at L4-5, and pain at the SI joint, tronchanteric bursa, and quad. (Tr. 291)

Mathes underwent a myelogram in January 2007, which showed evidence of a left neural foramina narrowing at L2-3, secondary to a disk bulge, and moderate stenosis with a disk bulge at L3-4. (Tr. 323.) Next, Mathes received a L3-4 left transforaminal epidural steroid injection with fluroscopy. (Tr. 327.) The following month, Dr. Pond assessed Mathes as able to lift frequently or carry eight pounds. (Tr. 331.) He also opined that Mathes would need to alternate between sitting and standing every ten minutes. *Id*.

A few months later, in March 2007, Dr. Pond noted that Mathes had persistent SI joint pain, but was responding well to physical therapy and an assistive belt. (Tr. 354.) He observed that she had intact strength and sensation, and walked without a limp. *Id*. On September 1, 2007, Mathes indicated on a Physical Activities Questionnaire that she had constant pain and listed among her activities, cooking, knitting, shopping, driving, cleaning, and laundry. (Tr. 203-205.) Eighteen days later, Dr. Pond observed that Mathes could stand, heel walk, toe walk, and had normal strength. (Tr. 372.) He assessed that Mathes did not respond to an epidural steroid injection for the disc bulge at the L3-4 level. *Id.* Dr. Pond also noted that the SI joint pain had been refractory to all the treatments given and recommended Mathes continue anti-inflammatories and stay as active as she can. *Id*.

Dr. Pond did not see Mathes again until June 17, 2009. (Tr.17, 376.) He opined that Mathes continued to have periodic left SI pain and pain over her quadriceps. (Tr. 376.) In addition, he noted that Mathes's quadriceps tendon had been repaired successfully in a previous surgery and recommended that she work on strengthening

herself. (Tr. 376-377.) Lastly, Dr. Pond recommended that Mathes see him on an as-needed basis. (Tr. 377.)

STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." § 405(g). The court will reverse the findings if they are not supported by substantial evidence or result from an error of law. *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002). Substantial evidence is such evidence contained within the entire record as a reasonable mind might accept as adequate. *Richardson v. Perales,* 402 U.S. 389, 401 (1971).

The court reviews the entire administrative record to determine if the Commissioner's decision is supported by the record. *Arkansas v. Oklahoma,* 503 U.S. 91, 113 (1992). However, the court does not "'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner'" *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

If the ALJ commits an error of law, reversal is required without regard to the volume of evidence supporting the factual findings. *Binion ex rel. Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997). Failure to follow the Commissioner's regulations and rulings constitutes legal error. *Prince v. Sullivan,* 993. F.2d 598, 602 (7th Cir. 1991). If the ALJ's decision lacks evidentiary support or is "so poorly articulated as to prevent meaningful review," the district court should remand the case. *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 785 (7th Cir. 2003) (internal quotation marks omitted). However, a "sketchy

4

opinion" may be sufficient if it is clear the ALJ considered the important evidence and the ALJ's reasoning can be traced. *Id.* at 787.

ANALYSIS

To obtain DIB and SSI, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505.

The Administration has adopted a sequential five-step process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The ALJ must determine at step one whether the claimant is currently engaged in substantial gainful activity. If so, she is not disabled. If not, at step two the ALJ must determine whether the claimant has a severe physical or mental impairment. If not, the claimant is not disabled. If so, at step three the ALJ determines whether the claimant's impairments meet or equal one of the impairments listed in the Administration's regulations, 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"), as being so severe as to preclude substantial gainful activity. If so, the claimant is found disabled. If not, at step four the ALJ determines the claimant's residual functional capacity ("RFC") and whether the claimant can perform her past relevant work. If she can perform her past relevant work she is not disabled. However, if she cannot perform past work, then at step five the ALJ determines whether the claimant has the RFC, in conjunction with age, education, and work experience, to make the adjustment to other work. If the claimant can make the adjustment, she is found not disabled. If she cannot

make the adjustment, she is found disabled.  20 C.F.R. 404.1520; *see Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

RFC is the most the claimant can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p; *Young*, 362 F.3d at 1000-01.  The Administration must consider all of the claimant's known, medically determinable impairments when assessing RFC.  § 404.1545(a)(2), (e).  The burden of moving forward at the first four steps is on the claimant.  At step five, the burden shifts to the Commissioner to demonstrate that the claimant can successfully perform a significant number of other jobs that exist in the national economy.  *See Young*, 362 F.3d at 1000.

An ALJ must "'minimally articulate his reasons for crediting or rejecting evidence of disability,'" *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir.1992)), "build[ing] an accurate and logical bridge from the evidence to his conclusion," *id.* at 872.  Although the ALJ need not discuss every piece of evidence, he or she cannot select and discuss only the evidence supporting the decision. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).   Evidence favoring as well as disfavoring the claimant must be examined by the ALJ, and the ALJ's decision should reflect that examination.  *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

In the present case, the ALJ determined that the "claimant was under a disability from September 15, 2005 to September 18, 2007."  (Tr. 16.)  Specifically, the ALJ found that Mathes did not have the RFC to engage in sustained work activity on a regular and continuous basis during that period.  Mathes agrees with this finding.  On the other hand,

6

she does not agree with the ALJ's disability findings at step four and five of the sequential evaluation process as of September 19, 2007.

In determining the credibility of the claimant's statements, the ALJ must consider the entire case record. SSR 96-7p. This includes the objective medical evidence, the individual's statements about symptoms, and statements provided by treating or examining physicians. *Id.* "The adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations." *Id.* Explanations that may provide insight into the claimant's credibility include, "the individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual" and " the individual may not take prescription medication because the side effects are less tolerable than the symptoms." SSR 96-7p.

The ALJ noted that Dr. Pond's September 19, 2007, medical evaluation of Mathes revealed improvements in her conditions; the doctor observed that she could stand, heel walk, toe walk, and had normal strength. (Tr. 372.) Citing 20 C.F.R. §§ 404.1529, 416.929 and SSRs 96-4p and 96-7p, the ALJ found that:

> the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 40.1567(a) with the following nonexertional limitations: no climbing of ladders, ropes, or scaffolds. Claimant must be allowed to sit or stand alternatively at will, provided that she is not off task more than 10% of the work period

(Tr. 16.)

Mathes argues the ALJ made an error in failing to consider the factors required by SSR 96-7p. Notably, for the period beginning September 19, 2007, the ALJ made no determination of the credibility of Mathes's statements concerning the limiting effects of her

symptoms and referenced none of her testimony regarding her symptoms. As it pertains to that time period, the ALJ repeatedly made conclusions from objective medical evidence presented without considering Mathes's testimony as required by SSR 96-7p.

For example, in his RFC assessment the ALJ considered the medical evidence of Mathes's continued back and SI joint pain provided by Dr. Pond, her treating physician. (Tr. 16.) Yet, the ALJ failed to examine Mathes's statements about the pain she experienced, such as pain was on the left side of her body. (Tr. 16, 52.) Mathes described her pain on a typical day as a level eight on a pain scale of zero to ten after taking her over the counter medication (Tr. 52.) Moreover, she testified that during the day she frequently napped because of fatigue and pain. (Tr. 53.)

When drawing an inference from the lack of medical records, the ALJ must consider any explanation by the claimant. SSR 96-7p. In his finding, the ALJ noted that Mathes provided no medical records after September 19, 2007, other than those related to a visit to Dr. Pond on June 17, 2009. The ALJ then determined that the lack of medical records "supports an inference that medical improvement had occurred." (Tr.17.)

However, the ALJ failed to discuss Mathes's testimony that she did not see Dr. Pond for a couple of years because he told her "there's no more I can do for you... there's no medication for you anymore, and there's really nothing – and there's no surgery because if I wanted to do surgery on you, he says, it wouldn't be a good 50/50 thing. It would be in a wheelchair." (Tr. 51.) Thus, the ALJ committed a legal error when he concluded, without considering Mathes's explanation, that a medical improvement occurred because of the lack of medical records.

Additionally, in reaching his decision, the ALJ determined that Mathes was taking only over the counter medication. (Tr. 17.) But, the ALJ never considered Mathes's explanation in her testimony that she did not take narcotics and prescription medications because they made her "squirrely" and nauseous. (Tr. 46.) Therefore, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion because he did not articulate reasons for rejecting Mathes's testimony as evidence of disability.

The Seventh Circuit Court of Appeals instructs ALJs to acknowledge the differences between the activities of daily living and the activities in a full-time job:

> The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons. . . , and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

*Bjornson v. Astrue*, 11-2422, 2012 WL 280736 (7th Cir. Jan. 31, 2012). Nevertheless, the ALJ referred to Mathes's activities, stating "the claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Claimant indicated she can sit and stand for thirty minutes. She shops, drives, does the laundry, cleans [and] knits." (Tr. 17.) Moreover, the ALJ failed to consider that Mathes's husband helps her perform her daily activities, (*See* Tr. 47-50).

As discussed above, the ALJ repeatedly reached conclusions from objective medical evidence without indicating his consideration of Mathes's testimony as required. Due to the ALJ's selective discussion of the evidence in his opinion, his determination that Mathes is not disabled for the period beginning September 19, 2007, is not supported by substantial evidence. Now, therefore,

9

IT IS ORDERED that the decision is reversed and the case is remanded to the Commissioner for a new hearing.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2012.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
CHIEF U. S. DISTRICT JUDGE